# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____
                                )
**DANIEL BARBOSA, et al.,**         )
                                )
    **Plaintiffs,**               )
                                )
        **v.**                   )         **Case No. 1:16-cv-01843 (APM)**
                                )
**UNITED STATES DEPARTMENT OF**   )
**HOMELAND SECURITY, et al.,**     )
                                )
    **Defendants.**             )
_____ )

## MEMORANDUM OPINION

## I.    INTRODUCTION

In late 2015 and early 2016, a series of massive storms devastated the State of Texas, causing millions of dollars in property damage and, tragically, dozens of casualties. In response, the Federal Emergency Management Agency ("FEMA")—the agency charged with administering federal disaster relief—mobilized efforts to provide assistance to the affected individuals. This case arises out of those efforts.

The President and, correspondingly, FEMA, derives the statutory authority to provide disaster relief from the Robert T. Stafford Disaster Relief and Emergency Assistance Act, 42 U.S.C. §§ 5121–5206 ("Stafford Act"). In 2000, Congress amended the Stafford Act to enable FEMA to, among other things, provide direct assistance to individuals under the Individuals and Households Program ("IHP"), including financial assistance for home repairs. Under the IHP, FEMA may directly provide federal grants to qualified applicants, rather than require those individuals to seek those grants through federally subsidized, state-run disaster relief funds. The IHP amendments tasked FEMA with designing and implementing the federal grant program, in

part, by issuing rules and regulations governing the program. FEMA subsequently issued a set of rules and regulations purporting to do just that.

Plaintiffs include 26 individuals whose homes were severely damaged during the 2015–2016 storms, and applied to FEMA for home repair assistance under the IHP, but had their applications denied, in whole or in part. Plaintiffs claim that FEMA violated federal law when it chose to disclose neither the legal standards it used to evaluate their applications nor the reasons for denying them full relief. So, Plaintiffs filed this suit to compel FEMA to articulate those standards, to shed light on the IHP process, and to reconsider their applications. Specifically, Plaintiffs charge FEMA with (1) failing to comply with its congressional mandate under the Stafford Act to promulgate regulations that "carry out" the IHP, 42 U.S.C. § 5174(j), and (2) relying on "secret rules" in non-public documents to deny their IHP applications in violation of 5 U.S.C. § 552(a)(1). For relief, Plaintiffs ask the court to order FEMA to promulgate regulations that (1) define the eligibility criteria for home repair assistance relief under the IHP, (2) detail the process for appealing application denials, and (3) insure the equitable and impartial administration of the IHP. Additionally, Plaintiffs ask the court to order FEMA to reconsider their applications under these new regulations.

Before the court is Defendants' Motion to Dismiss and Plaintiffs' Motion for Summary Judgment. Defendants move to dismiss the Complaint on the ground that the court lacks subject matter jurisdiction, because the United States has not waived its sovereign immunity from suit. Defendants point to the Stafford Act's "discretionary function exception," which bars federal courts from reviewing FEMA's discretionary decisions. Defendants contend that the agency's decisions concerning the content and specificity of its regulations are discretionary and, therefore, cannot be the subject of judicial review. *See* 42 U.S.C. § 5148. Further, Defendants argue that,

even if the court has jurisdiction, Plaintiffs have failed to state a claim for relief because its IHP rules and regulations, as currently constituted, do exactly what Congress commanded. Expectedly, Plaintiffs view FEMA's actions, or inaction, differently. They contend that the court has jurisdiction because FEMA's regulations are not covered by the Act's discretionary function exception. They also assert that FEMA has not, as Congress directed, promulgated the necessary regulations to implement the IHP. On that basis, Plaintiffs move for summary judgment on Counts I–III of their Complaint, seeking a judgment in their favor that FEMA violated federal law by issuing deficient regulations.

Having given careful consideration to the parties' arguments, the court agrees with Defendants that the Stafford Act's discretionary function exception bars Plaintiffs' challenge to FEMA's IHP rulemaking. Accordingly, the court grants Defendants' Motion to Dismiss and denies Plaintiffs' Motion for Summary Judgment.

## II.  BACKGROUND

### A.  Statutory and Regulatory Background

Congress passed the Stafford Act ("the Act"), originally known as the Disaster Relief Act of 1974, to provide federal assistance when disaster strikes. *See* 42 U.S.C. § 5121 et seq. The Act authorizes the President to declare a major disaster and, where appropriate, direct "[f]ederal agencies . . . [to] provide assistance essential to meeting immediate threats to life and property resulting from [the] major disaster." *Id*. § 5170b(a). The President is authorized to delegate his authority under the Act to a federal agency, *see id*. § 5164, which President George H.W. Bush did in 1989, delegating most of that authority to the Federal Emergency Management Agency ("FEMA"), which is now part of the Department of Homeland Security (collectively, "Defendants"). Exec. Order No. 12,673: Delegation of Disaster Relief and Emergency Assistance

Functions, 54 Fed. Reg. 12,571, § 1 (Mar. 23, 1989). FEMA, in turn, is responsible for promulgating the regulations necessary to implement the Act's provisions, including those regulations that Plaintiffs challenge in their Complaint.

Plaintiffs' lawsuit concerns FEMA's "Individuals and Households Program" ("IHP"). The IHP authorizes the President, through FEMA, to provide direct federal assistance to disaster-affected individuals, as opposed to indirect assistance through federally subsidized state disaster relief funds. 42 U.S.C. § 5174. The Act includes three general eligibility requirements to receive IHP aid: (1) the affected home must be owner-occupied, (2) the damages must be disaster-related, and (3) the repairs must be necessary to return the affected home to sanitary and safe living conditions. Congress said no more about eligibility criteria. Instead, it directed FEMA to "prescribe rules and regulations to carry out [the IHP], including criteria, standards, and procedures for determining eligibility." *Id*.[1]

The Stafford Act and its amendments direct FEMA to fill in specifics concerning two other statutory provisions that implicate the IHP. First, the Act requires FEMA to "issue . . . . such regulations as may be necessary . . . for insuring that the" IHP is "accomplished in an equitable and impartial manner, without discrimination on the grounds of race, color, religion, nationality, sex, age, disability, English proficiency, or economic status." *Id*. § 5151(a). Second, it directs FEMA to "issue rules which provide for the fair and impartial consideration of appeals" from any denial of disaster relief, including under the IHP. *Id*. § 5189a(c).

---

[1] The statute actually directs the "President" to act, but, of course, with respect to disaster relief, the President acts through FEMA. Therefore, for ease of reference, throughout this opinion, the court will refer to Congress as having directed FEMA to act.

### 1. Regulations Promulgated to "Carry Out" the IHP

FEMA has issued rules and regulations intended to "carry out" the IHP, which are contained in sections 206.110 through 206.120 of Chapter 44 of the Code of Federal Regulations. *See* 44 C.F.R. §§ 206.110–120. The court here focuses on those sections relevant to the provision of housing assistance. Section 206.110, among other things, sets the maximum amount of assistance a qualified individual may receive, identifies the types of assistance available, fixes the date of eligibility, defines the period of assistance, and places certain limitations and conditions on assistance recipients. *Id.* § 206.110. Section 206.111 provides definitions of terms used in the relevant regulations. *Id.* § 206.111. Section 206.112 sets application deadlines following a disaster declaration, including provisions governing extensions of time and late applications. *Id.* § 206.112.

Section 206.113, entitled "Eligibility Factors," lists both qualifying and disqualifying factors for disaster assistance under the IHP. Subsection (a) lists nine "conditions of eligibility," five of which address when assistance is available to an applicant who has insurance. *Id.* § 206.113(a)(2)–(6). Two other factors specifically address that housing assistance is available (1) when "the primary residence has been destroyed, is uninhabitable, or is inaccessible," or (2) when "a renter's primary residence is no longer available as a result of the disaster." *Id.* § 206.113(a)(8)–(9). Subsection (b) lists ten "conditions of ineligibility," the first five of which address housing assistance. For instance, individuals do not qualify if they are displaced from properties other than their pre-disaster primary residence (e.g., a vacation home). *Id.* § 206.113(b)(1). Additionally, those individuals who have "adequate rent-free housing accommodations," a "secondary or vacation residence within reasonable commuting distance to the disaster area," or a "rental property that meets their temporary housing needs," likewise are

ineligible to receive housing assistance. *See id.* §§ 206.113(b)(2), (b)(3). Lastly, individuals who have adequate insurance coverage, and receive timely compensation for their damage from their insurer, do not qualify for housing assistance. *Id.* § 206.113(b)(6).

Section 206.117 addresses the types of housing assistance available under the IHP. Qualified applicants may receive financial assistance for temporary housing, direct assistance in the form of purchased or leased temporary housing, and financial assistance for the repair or replacement of real property. *Id.* § 206.117(b)(1)–(3). As to each of those types of assistance, Section 206.117 outlines additional requirements or eligibility factors, *see, e.g.*, *id.* §§ 206.117(b)(1)(i), (b)(2)(i), (b)(3)(i), and identifies the component parts of applicants' homes that, if damaged, qualify for repair assistance. *See id.* § 206.117(b)(2)(ii).

2. *Regulations Concerning Appeals from Adverse Decisions*

Pursuant to congressional directive, *see* 42 U.S.C. § 5189a, FEMA also has "issue[d] rules which provide for the fair and impartial consideration of appeals[.]" Section 206.115 sets forth instructions and procedures for appealing assistance decisions made under the IHP. The section provides that an appeal must be filed within 60 days and enumerates the types of decisions that can be appealed. 44 C.F.R. § 206.115(a). It further instructs what an appeal petition must include, identifies to whom an appeal should be directed, and sets a 90-day deadline for FEMA or the State to provide a written disposition of an appeal. *Id.* at §§ 206.115(b), (c), (f). The regulation also permits an applicant to "ask for a copy of information in his or her file by writing to FEMA or the State as appropriate." *Id.* at § 206.115(d). Lastly, the regulation declares that the "decision of the appellate authority is final." *Id.* at § 206.115(f).

### 3. Regulations Concerning Nondiscrimination in Disaster Assistance

Finally, Section 206.11 addresses Congress' direction to "issue . . . such regulations as may be necessary" to provide disaster assistance in a nondiscriminatory manner. *See* 42 U.S.C. § 5151. That regulation requires that "[a]ll personnel carrying out Federal major disaster or emergency assistance functions . . . shall perform their work in an equitable and impartial manner, without discrimination on the grounds of race, color, religion, nationality, sex, age, or economic status." 44 C.F.R. § 206.11(b). It also requires "government bodies and other organizations [to] provide a written assurance of their intent to comply with regulations relating to nondiscrimination." *Id.* § 206.11(c).

### B. Factual and Procedural Background

Plaintiffs include 26 Texas residents whose homes were damaged in a series of severe storms in 2015 and 2016 ("Individual Plaintiffs") and whose IHP applications FEMA denied either in whole or in part. Compl., ECF No. 1 [hereinafter Compl.], ¶¶ 9, 75. Also bringing suit against FEMA is La Union del Pueblo Entero, a non-profit organization dedicated to assisting low-income families apply for government assistance. *See id.* ¶ 10.

Plaintiffs filed this matter on September 15, 2016, seeking judicial review of FEMA's IHP rulemaking under the Administrative Procedure Act ("APA"). *Id.* ¶ 79. Plaintiffs' first three claims allege that FEMA has violated congressional directives by (1) "failing to adopt regulations needed to carry out [the IHP], including criteria, standards, and procedures for determining eligibility for assistance," as required under 42 U.S.C. § 5174(j) (Count I), *id.* ¶¶ 81–85; (2) "failing to adopt regulations that insure equitable and impartial IHP administration," as required under § 5151(a) (Count II), *id.* ¶¶ 86–88; and (3) "failing to adopt regulations that provide for fair and impartial consideration of appeals," as required under § 5189a(c) (Count III), *id.* ¶¶ 89–90.

Plaintiffs also assert that FEMA uses "unpublished rules that adversely affect applicants" in violation of 5 U.S.C. § 552(a)(1) (Count IV). *Id*. ¶¶ 91–95. Plaintiffs seek an order compelling Defendants to (1) promulgate more detailed regulations concerning how FEMA makes IHP eligibility and award decisions, (2) cease from using unpublished rules in making such decisions, and (3) reconsider Plaintiffs' disaster relief applications without the use of rules that were unpublished at the time FEMA denied their applications. *Id*. ¶ 96.

Defendants move to dismiss the Complaint. They contend that (1) the court lacks subject matter jurisdiction to hear Plaintiffs' claims under Rule 12(b)(1) of the Federal Rules of Civil Procedure and (2) Plaintiffs failed to state a claim for relief under Rule 12(b)(6). *See* Defs.' Mot. to Dismiss, ECF No. 4, Mem. in Supp., ECF No. 4-1 [hereinafter Defs.' Mot]. Defendants assert that the court lacks subject matter jurisdiction because the United States has not waived its sovereign immunity in this context. To support that position, Defendants point to the Stafford Act's "discretionary function exception," which provides that the federal government "shall not be liable for any claim based upon the exercise or performance of or the failure to exercise or perform a discretionary function or duty on the part of a Federal agency or an employee of the Federal Government in carrying out the provisions of this chapter." *Id*. at 7–13; 42 U.S.C. § 5148. Additionally, Defendants argue that Plaintiffs have failed to state a claim under the APA because the challenged regulations are permissible interpretations of the Stafford Act's directives. Defs.' Mot. at 16–21.[2]

---

[2] Defendants originally argued that Count III of Plaintiffs' Complaint was rendered moot when FEMA published its IHP guidelines in September 2016. *See* Defs.' Mot at 14. However, in light of the D.C. Circuit's recent decision in *Cierco v. Mnuchin*, 857 F.3d 407 (D.C. Cir. 2017), Defendants withdrew that contention at the hearing on the parties' Motions. *See* Transcript of May 25, 2017, Hearing, ECF No. 13, at 41–42. Accordingly, the court will not address Defendants' mootness argument.

Plaintiffs both oppose Defendants' Motion, *see* Pls.' Opp'n to Defs.' Mot., ECF No. 5 [hereinafter Pls.' Opp'n], and move for partial summary judgment, *see* Pls.' Mot. for Partial Summ. J., ECF No. 8 [hereinafter Pls.' Mot.]. Taking both motions together, Plaintiffs argue that the "regulations" FEMA has promulgated do not satisfy the congressional directive to issue or prescribe rules or regulations to implement the IHP. Compl. ¶¶ 82, 87, 90. Moreover, because Congress commanded FEMA to act, its failure to do so cannot be discretionary and therefore falls outside the Stafford Act's discretionary function exception. The court now turns to those arguments.

## III.   LEGAL STANDARD

As noted, Defendants move to dismiss Plaintiffs' Complaint both for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure, as well as for failure to state a claim upon which relief can be granted under Rule 12(b)(6). A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction requires the court to assess its own power to entertain the action. In order to withstand a Rule 12(b)(1) motion, "the plaintiff bears the burden of establishing [the court's] jurisdiction by a preponderance of the evidence." *Moran v. U.S. Capitol Police Bd.*, 820 F. Supp. 2d 48, 53 (D.D.C. 2011) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). In contrast, a Rule 12(b)(6) motion tests the legal sufficiency of a complaint. *See Howard Univ. v. Watkins*, 857 F. Supp. 2d 67, 71 (D.D.C. 2012). Courts reviewing a motion to dismiss under Rule 12(b)(6) must accept as true all factual allegations in the complaint and "grant [the] plaintiff the benefit of all inferences that can be derived from the facts alleged." *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (internal quotation marks and citation omitted).

Plaintiffs, for their part, move for summary judgment on Counts I–III. Typically, such motions are reviewed under the standard set forth in Rule 56. In cases such as this one, however, that involve the review of an agency action under the APA, the Rule 56 standard does not apply. *See Stuttering Found. of Am. v. Springer*, 498 F. Supp. 2d 203, 207 (D.D.C. 2007). Instead, "the district judge sits as an appellate tribunal" and "[t]he 'entire case' on review is a question of law." *Am. Biosci. Inc. v. Thompson*, 269 F.3d 1077, 1083–84 (D.C. Cir. 2001) (citing cases).

## IV. DISCUSSION

Ordinarily, a federal court must address a challenge to its jurisdiction before considering the merits of the parties' claims. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93–94 (1998). The court does so here, but with a slight twist. To answer the jurisdictional question of whether Defendants are immune from suit under the Stafford Act's discretionary function exception, the court must determine whether Congress vested discretion in FEMA to issue regulations and, if so, to what degree. The answer to that inquiry necessarily lies in the text of the statutes themselves. The exact same exercise applies to evaluating Plaintiffs' APA claims under *Chevron* step one. *See Chevron U.S.A. Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842–44 (1984) (holding that the first step in evaluating claims brought under the APA involves determining "whether Congress has directly spoken to the precise question at issue"); *see also Am. Trucking Ass'n v. U.S. Dep't of Transp.*, 166 F.3d 374, 378 (D.C. Cir. 1999) ("The *Chevron* test applies to issues of how specifically an agency must frame its regulations."). Accordingly, the court's jurisdictional and merits inquiries necessarily overlap. *See Columbus Reg'l Hosp. v. Fed. Emergency Mgmt. Agency*, 708 F.3d 893, 898 (7th Cir. 2013) (finding that the question of whether certain FEMA activities were discretionary under the Stafford Act, and thus barred from judicial review, necessitated "tak[ing] up the [plaintiff's] claims on the merits"); *cf. Vt. Agency of Nat. Res.*

*v. United States ex rel. Stevens*, 529 U.S. 765, 778–79 (2000) (asking first whether the statute itself creates the cause of action to be asserted against the states before the jurisdictional question of Eleventh Amendment immunity). The court therefore begins with a discussion of the discretionary function exception and then turns to the statutes themselves.

A. **Whether the Stafford Act's Discretionary Function Exception Precludes Review of Plaintiffs' Claims**

As a general rule, the United States is immune from suit unless it consents to be sued. *See, e.g.*, *United States v. Mitchell*, 463 U.S. 206, 212 (1983). Under the Stafford Act, the United States only has partially granted such consent. The Act's discretionary function exception prevents the federal government from being held liable for "any claim based upon the exercise or performance of or the failure to exercise or perform a *discretionary function* or duty on the part of the federal agency or an employee of the federal government in carrying out the provisions of" Chapter 42 of the United States Code. 42 U.S.C. § 5148 (emphasis added). In *United States v. Gaubert*, the Supreme Court established a two-part inquiry to determine the circumstances in which the discretionary function exception will shield the United States from suit. 499 U.S. 322–23 (1991). In broad strokes, the *Gaubert* test first determines whether a challenged act is discretionary and, if so, then questions whether the act is of the kind that Congress intended to immunize from suit. *Id.* Although *Gaubert* concerned the discretionary function exception under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2680(a), courts also apply *Gaubert* to the Stafford Act's exception because its text mirrors that of the FTCA and because the Stafford Act's legislative history shows that Congress intended to incorporate the FTCA standard. *See, e.g., St. Tammany Par., ex rel. Davis v. Fed. Emergency Mgmt. Agency*, 556 F.3d 307, 323 (5th Cir. 2009) (citing cases and legislative history); *In re World Trade Ctr. Disaster Site Litig.*, 521 F.3d 169,

195–96 (2d Cir. 2008); *Dureiko v. United States*, 209 F.3d 1345, 1351 (Fed. Cir. 2000). This court will do the same.

Under the first prong of the *Gaubert* test, a court asks whether an agency's challenged acts "are discretionary in nature, acts that 'involv[e] an element of judgment or choice.'" *Gaubert*, 499 U.S. at 322 (citation and internal quotation marks omitted). The degree of agency "choice" depends on the source of legal authority for the agency's action. "If a statute, regulation, or policy leaves it to a federal agency to determine when and how to take action, the agency is not bound to act in a particular manner and the exercise of its authority is discretionary." *St. Tammany Par.*, 556 F.3d at 323. On the other hand, "[t]he requirement of judgment or choice is not satisfied," and the discretionary function exception is inapplicable, "if a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow, because the employee has no rightful option but to adhere to the directive." *Gaubert*, 499 U.S. at 322 (citation and internal quotation marks omitted). In evaluating whether an agency's action involved discretion, what matters is the nature of the conduct, rather than the status of the actor. *See id.*

The second *Gaubert* prong winnows the field of discretionary acts that enjoy immunity from suit. Under that prong, courts are to ask whether the judgment exercised by the agency "is of the kind that the discretionary function exception was designed to shield." *Id.* at 322–23 (internal quotation marks omitted). "Decisions that require choice are exempt from suit . . . only if they are 'susceptible to policy judgment' and involve an exercise of 'political, social, [or] economic judgment.'" *Cope v. Scott*, 45 F.3d 445, 448 (D.C. Cir. 1995) (quoting *Gaubert*, 499 U.S. at 325).

With the *Gaubert* test in hand, the court turns to whether FEMA's promulgation of regulations constitutes an exercise of its discretionary function.

1. *Whether FEMA's Promulgation of Regulations is a Discretionary Act*

In deciding whether the agency action challenged here—the promulgation of regulations—is a discretionary act, the court begins with the text of the three statutes that form the basis for Plaintiffs' claims.

- 42 U.S.C. § 5174(j) requires FEMA to "prescribe rules and regulations to carry out [the IHP], including criteria, standards, and procedures for determining eligibility for assistance."

- 42 U.S.C. § 5151(a) instructs FEMA to "issue . . . such regulations as may be necessary for the guidance of personnel carrying out [the IHP and any] . . . [s]uch regulations shall include provisions for insuring that the [IHP is carried out] in an equitable and impartial manner, without discrimination."

- 42 U.S.C. § 5189a(c) directs FEMA to "issue rules which provide for the fair and impartial consideration of appeals" from any "decision regarding eligibility for, from, or amount of [disaster] assistance."

Thus, whether the discretionary function exception applies here depends on whether FEMA was exercising its discretion when "prescrib[ing]" and "issu[ing]" "rules" or "regulations," as required by Congress.

Plaintiffs' argument against applying the exception proceeds as follows. Plaintiffs assert that FEMA's "regulations," as codified in the Code of Federal Regulations ("CFR"), do not satisfy the mandatory directives contained in each of the above statutes. Compl. ¶¶ 82, 87, 90. For instance, Plaintiffs allege that the regulations listed at 44 C.F.R. § 206.110–206.119 fall short because the regulations (1) "do not state eligibility standards in sufficient detail to permit FEMA to 'carry out' [the] IHP"; (2) do not "insure" equitable and impartial administration of the IHP

because the regulations "are so vague"; and, (3) with respect to appeals, are so devoid of substance that FEMA may rely on secret rules to reject appeals without disclosing the reasons for its determination to the applicant. *Id.* ¶¶ 82, 87, 90. Plaintiffs assert that these shortcomings constitute a "deliberate choice" by FEMA not to promulgate the regulations that Congress demanded and that such rulemaking choices are not the kinds of discretionary acts that are immune from suit. Pls.' Opp'n at 2–7. Put succinctly, Plaintiffs argue that "FEMA has no discretion to violate federal law." *Id.* at 2.

Plaintiffs' argument fails for two reasons, one based on the text of the three statutes and the other based on binding D.C. Circuit precedent. The court addresses each reason in turn.

a. <u>Plaintiffs' Argument Contradicts the Text of the Stafford Act</u>

Plaintiffs' argument is premised on a mischaracterization of the text of the Stafford Act. *See* Compl. ¶¶ 2, 27; Pls.' Mot. at 7, 38, 42. Under the Act, Congress granted FEMA the authority to issue both rules *and* regulations, not regulations alone. 42 U.S.C. §§ 5121–5206. In fact, only one of the three cited statutes, 42 U.S.C. § 5151(a), directs FEMA to administer the IHP exclusively through "regulations" adopted in the CFR. Section 5174(j), on the other hand, permits FEMA to "prescribe *rules and regulations* to carry out" the IHP, *id.* § 5174(j) (emphasis added), and Section 5189a(c) only requires FEMA to "issue *rules*" with respect to the appeals process, *id.* § 5189a(c) (emphasis added). Furthermore, even section 5151(a), which uses only the word "regulation," merely directs FEMA to publish such regulations "*as may be necessary* to [carry out the IHP]." 42 U.S.C. § 5151(a) (emphasis added). Accordingly, a plain reading of the statutes does not support Plaintiffs' assertion that the Stafford Act requires FEMA to implement the IHP only through published "regulations" in the CFR. Compl. ¶¶ 82, 87, 90.

The court cannot, as Plaintiffs suggest, brush aside Congress' decision to use the word "rules," in addition to the word "regulations," or ascribe the same meaning to both terms. *See* Transcript of May 25, 2017, Hearing, ECF No. 13 [hereinafter Hr'g Tr.], at 8–9; *cf. Deal v. United States*, 508 U.S. 129, 134 (1993) (acknowledging that "Congress sometimes uses slightly different language to convey the same message") (internal quotation marks omitted). Ordinarily, "[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Dean v. United States*, 556 U.S. 568, 573 (2009) (citation and internal quotation marks omitted). That rule takes on greater force where, as here, the statutes were adopted at separate times. *Muscogee (Creek) Nation v. Hodel*, 851 F.2d 1439, 1444 (D.C. Cir. 1988) ("Where the words of a later statute differ from those of a previous one on the same or related subject, the Congress must have intended them to have a different meaning"); *see also United States v. Wilson*, 290 F.3d 347, 360 (D.C. Cir. 2002). Congress enacted (1) Section 5151(a) in 1974, *see* Pub. L. No. 93-288, § 308, 88 Stat. 143, 150 (1974) (formerly § 311); (2) Section 5189a(c) in 1988, *see* Pub. L. No. 100-707, tit. 1, sec. 106, § 423, 102 Stat. 4689, 4705 (1988); and (3) Section 5174(j) in 2000, *see* Pub. L. No. 106-390, tit. 2, sec. 206(a), § 408, 114 Stat. 1552, 1566 (2000). That the statute with the narrowest directive, Section 5151(a), is also the first-in-time statute suggests that Congress, in its amendments, intended to grant FEMA broader authority to select its methods for designing the IHP, and not to limit the agency to formal rulemaking alone. And affording FEMA increased flexibility in implementing the IHP makes perfect sense. The awarding of disaster relief depends on a host of variables, including the availability of funds, the nature of the disaster, and the number of persons affected by the disaster. Thus, ascribing different meanings to the words "regulations" and "rules," and thereby granting FEMA wide berth in how

it carries out its statutory obligations, is consistent with the Stafford Act's purpose of "assur[ing] a prompt and comprehensive federal response to a national disaster," *In re World Trade Center Disaster Site Litig.*, 521 F.3d at 194. *See Chapman v. Houston Welfare Rights Organization*, 441 U.S. 600, 608 (1979) ("As in all cases of statutory construction, our task is to interpret the words of [the statute] in light of the purposes Congress sought to serve.").

The legislative history of Section 5174(j), which broadly directs FEMA to "carry out" the IHP, lends further support for the court's interpretation of the statutes at issue. Section 5174(j) first appeared in the Disaster Relief Act of 1974. In that Act, Congress directed the President to "promulgate regulations" to "carry out" the IHP. § 408(i), 114 Stat. 1570. Twenty-five years later, Congress amended that provision, as part of the Disaster Mitigation Act of 2000, to read that the President "shall prescribe rules and regulations to carry out" the IHP. § 408(i), 114 Stat. 1570. Why would Congress change decades-old statutory text from "promulgate regulations" to "prescribe rules and regulations" unless it intended to alter the statute's meaning? The natural reading of that textual change is that Congress intended to grant FEMA greater flexibility in "carry[ing] out" the IHP. Such expanded implementing authority is fatal to Plaintiffs' argument: FEMA simply does not need to set forth all eligibility criteria through published regulations in the CFR. Rather, Congress afforded FEMA the discretion to rely on informally adopted "rules," in addition to formal rulemaking, to administer the program.

Plaintiffs also argue that the three statutes' textual differences are irrelevant because their claims actually concern FEMA's alleged failure to publish the *policies* governing the IHP, regardless of whether a policy is characterized as a "rule" or "regulation." *See* Hr'g Tr. at 10–11, 46–48. That argument, however, runs aground on the shores of Plaintiffs' Complaint. Counts I through III each rest squarely on the theory that the "regulations" FEMA published in the CFR,

standing alone, do not satisfy the directives of Congress. *See* Compl. ¶ 82 ("FEMA's IHP *regulations . . .* do not satisfy the requirement stated in [Section 5174(j) of the Stafford Act]"); ¶ 83 (alleging that "the text of 44 C.F.R. § 206.110–19 alone proves that FEMA must use unpublished *rules* to decide eligibility for disaster assistance") (emphasis added); ¶ 87 ("On their face, FEMA's IHP *regulations . . .* do[] not 'insure' equitable and impartial administration as required by [Section 5151(a) of the Stafford Act]") (emphasis added); ¶ 90 ("On their face and as applied, FEMA's IHP *regulations . . .* do not provide for the fair and impartial consideration of appeals") (emphasis added). Indeed, Plaintiffs even go so far as to offer a one-page draft "regulation" entitled "The meaning of 'disaster-related damage'" for adoption and publication in the CFR at "44 C.F.R. § 206.111.5," to demonstrate the alleged ease with which FEMA could "rectify most of the deficiencies in its current regulations." Pls.' Reply Supporting Pls.' Partial Mot. for Summ. J., ECF No. 12, at 11, and Ex. A, ECF No. 12-1. Nowhere do Plaintiffs contend, however, that FEMA's "rules" *and* "regulations" in combination fail to execute the direction of Congress. The court will not permit Plaintiffs, now confronted with statutory text that does not support their claims as drawn, to recast their suit as one seeking mere publication of policies rather than affirmative adoption of regulations.

Plaintiffs also rely on an alternative textual analysis, asserting that the plain text of the Stafford Act circumscribes the subject matter of FEMA's rulemaking to such an extent that the agency cannot claim its rulemaking is discretionary. With respect to Section 5174(j), Plaintiffs contend that the words "carry out" and "including criteria, standards, and procedures" mean Congress required FEMA to "state in regulation *all* eligibility standards and procedures that FEMA uses to carry out IHP." Pls.' Opp'n at 14; *see also* Pls.' Mot. at 11–16 (arguing that "at minimum, § 5174(j) requires FEMA to publish regulations that rectify the five deficiencies described

above").[3]  Plaintiffs place heavy emphasis on the words "carry out," which they contend means the "accomplishment of a completed act," and thus mandates FEMA to include all criteria and standards that it uses to "decide[] who will get what IHP assistance." *Id.* at 9–13 (citing cases).

The court disagrees that, in the context of this statute, "carry out" means seeing an act through to completion.  Congress could not have meant for FEMA to "complete" or "conclude" the IHP when it elected to use that phrase.  Rather, the more natural interpretation of "carry out" in this context is that Congress meant for FEMA to "put into execution" the IHP by way of rules and regulations.  *See Carry Out*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/carry%20out (last visited June 26, 2017).  Read this way, by instructing FEMA to put the IHP into execution, Congress did not intend to require the agency to publish in the CFR *every* standard or piece of criteria that it might use to evaluate disaster relief eligibility. Such a reading would make little sense, particularly in the context of providing disaster assistance, which, as noted, can depend on a number of factors.

Plaintiffs' reading of Section 5151(a) likewise does not foreclose the agency's exercise of discretion.  Plaintiffs seize on the word "insure"—as in "insuring" nondiscrimination in disaster assistance—and assert that it is a "muscular word" that means "to make certain especially by taking necessary measures and precautions."  Pls.' Mot. at 17 (citing Merriam-Webster Dictionary). Plaintiffs focus on "insure," however, ignores another key phrase in Section 5151(a)—"as may be necessary"—which affords the agency substantial discretion.  *Cf. Nat'l Cable & Telecomm. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 968–69 (2005) (affording *Chevron* deference to rulemaking under statute that authorized agency "to prescribe such rules and regulations as may be necessary").  Plaintiffs' selective reading of the statute cannot convert a discretionary act into

---

[3] As discussed earlier, this argument independently fails because the statute does not require FEMA to "carry out" the IHP only through regulations, but through "rules and regulations."

a mandatory one.[4] Thus, the court rejects Plaintiffs' narrow interpretation of the Stafford Act's mandate and concludes that the statutory text confers upon FEMA substantial discretion in how to implement the IHP, thereby satisfying the first prong of *Gaubert*.

### b. Plaintiffs' Argument Fails Under D.C. Circuit Precedent

Plaintiffs' argument that FEMA lacks discretion concerning how to implement the IHP also runs contrary to precedent in this Circuit. When faced with broad statutory mandates similar to those at issue here, the D.C. Circuit has held that "the agency [is] entitled to broad deference in picking the suitable level" of specificity for its regulations. *Ethyl Corp. v. E.P.A.*, 306 F.3d 1144, 1149 (D.C. Cir. 2002). Here, each of the three statutes command FEMA to institute rules, regulations, or both, on a general topic related to administering the IHP. Section 5174(j) concerns "criteria, standards, and procedures for determining eligibility for assistance" under the IHP. 42 U.S.C. § 5174(j). Section 5151(a) relates to "the processing of applications . . . in an equitable and impartial manner." *Id.* § 5151(a). And section 5189a(c) addresses the "fair and impartial consideration of appeals." *Id.* § 5189a(c). Such broad mandates do not significantly handcuff FEMA's discretion when rulemaking, as none of the statutes supply any further direction as to required content or level of specificity. The generality of these provisions means that Congress left it to FEMA to decide how best to satisfy the statutory mandates. *Cf. Am. Trucking Ass'n*, 166 F.3d at 379 (observing that "[i]n a series of cases we have explicitly accorded agencies very broad deference in selecting the level of generality at which they will articulate rules"). Such a broad grant of discretion easily satisfies the first prong of the *Gaubert* test—that the agency acted with the authority to make a choice or judgment.[5]

---

[4] Plaintiffs do not make a serious argument that the text of Section 5189a(c) removes discretion from FEMA; rather, its argument is that the regulations do not reasonably reflect what Congress mandated. *See* Pls.' Mot. at 20–21.
[5] Plaintiffs cite several cases where they claim courts have rejected the argument that FEMA maintains rulemaking discretion under the Stafford Act. *See* Pls' Opp'n at 5 (citing cases). However, those cases stand for the proposition

Plaintiffs, for their part, point to a series of D.C. Circuit cases to support their view that FEMA lacks discretion to determine the specificity of its regulations under the Stafford Act.[6] *See* Pls.' Mot. at 21–29. They rely heavily on *Ethyl Corp. v. E.P.A.* in particular, asserting that "[t]he case at bar is indistinguishable from *Ethyl.*" *Id.* at 25. Not so. In *Ethyl,* the court considered whether the Environmental Protection Agency ("EPA") had complied with its obligations under the Clean Air Act ("CAA"), which instructed the agency to, "*by regulation*[,] establish methods and procedures for making tests" designed to measure motor vehicle emissions. *See Ethyl*, 306 F.3d at 1148–49 (emphasis added). The EPA asserted that it had satisfied its mandate, even though it had not promulgated test methods of its own, because the agency had instead "establishe[d] a framework for automobile manufacturers to develop their own tests." *Id.* at 1146. The court disagreed, finding that the statute required the agency to actually issue regulations specifically governing emissions test procedures—i.e., the agency did not have discretion to outsource that responsibility to third-parties. *Id.* at 1148–50. Here, in sharp contrast, FEMA has not outsourced its administration of the IHP to any third party. To the contrary, there is no dispute that FEMA in fact issued rules and regulations designed to "carry out" the IHP and its appeals process in a nondiscriminatory manner. Plaintiffs' challenge therefore falls "on the 'too general' rather than the 'no regulation at all' side of the line," *Cement Kiln Recycling Coal. v. EPA*, 493 F.3d 207, 222 (D.C. Cir. 2007), and directly implicates FEMA's discretion how to administer the IHP. *Public Citizen v. Nuclear Regulatory Commission* is inapposite for the same reason. The statute at issue in that case, the Nuclear Waste Policy Act of 1982, required the agency to "establish" certain instructional requirements for personnel training programs for civilian nuclear power plant

_____

that FEMA cannot violate the Constitution under the guise of its discretionary function. Plaintiffs do not advance constitutional claims in this case. Accordingly, Plaintiffs' reliance on those cases proves unhelpful.
[6] For ease of discussion, the court will address Plaintiffs' reliance on *MST Express v. Dep't of Transp.*, 108 F.3d 401 (D.C. Cir. 1997), when discussing the substance of Plaintiffs' APA claims.

licensees. 901 F.2d 147, 149 (D.C. Cir. 1990). The court found that agency had failed to do so, instead permitting "case-by-case impositions of requirements on particular licensees." *Id.* at 158. No similar abdication of implementation authority is present in this case.

Plaintiffs' reliance on *American Airlines, Inc. v. Transportation Security Administration*, 665 F.3d 170 (D.C. Cir. 2011), and *Oceana, Inc. v. Locke*, 670 F.3d 1238 (D.C. Cir. 2011), is unconvincing for similar reasons. Both cases concerned circumstances in which an agency reserved the option to deviate from regulations promulgated pursuant to a statutory mandate. In *Oceana*, the D.C. Circuit held that the National Marine Fisheries Service ("NMFS") had violated its obligations under the Magnuson-Stevens Act—which required NMFS to "establish a standardized reporting methodology to assess the amount and type" of fish caught but ultimately discarded (i.e., bycatch)—because the NMFS's proposed reporting methodology contained an exception that NMFS could trigger "in any year in which external operational constraints would prevent NMFS from fully implementing" the reporting regulations. *Id.* at 1239–41 (internal quotation marks omitted). The court considered *Ethyl* and its progeny in finding that, because the agency could not identify any "meaningful limitation" on its ability to "trigger" that exception at will, it had failed to carry out its obligation to establish binding regulations to effectively monitor the amount of annual bycatch. *Id.* at 1241. In other words, the exception was "so vague as to make the rule meaningless." *Id.* at 1241–42. Similarly, *American Airlines* relied on *Oceana* to hold the same concerning a Transportation Security Agency ("TSA") decision to include a unilateral "case-by-case" exception to an airport security funding prioritization list that it had created pursuant to requirements set out in the Aviation and Transportation Security Act. 665 F.3d at 176–77. The court again found that the agency's exception swallowed the rule—TSA could not have fulfilled Congress' mandate to promulgate binding regulations while simultaneously

maintaining the unilateral authority to deviate from those regulations whenever it desired. *Id.* Here, in contrast, FEMA has not unilaterally excepted itself from administering the IHP under any circumstances: FEMA has explicitly adopted the regulations that it uses to administer the IHP and Plaintiffs have failed to identify an opt-out provision in those regulations similar to those that ran afoul of the congressional directives in *Oceana* and *American Airlines*.

Thus, the cases on which Plaintiffs rely are distinguishable. At bottom, Plaintiffs' cited cases stand for the general propositions that an agency cannot: (1) ignore Congress' explicit direction to regulate in favor of some other preferred means of administering a program (*Ethyl* and *Public Citizen*), or (2) satisfy an explicit direction to regulate by issuing regulations that the agency can nonetheless cast aside at will by relying on an overly broad exception (*Oceana* and *American Airlines*). In this case, by contrast, FEMA did exactly what Congress required by creating rules and regulations to administer the IHP. Those rules and regulations do not contain any exception "so vague as to make the rule meaningless." *Oceana*, 670 F.3d at 1241–42. In summary, the court finds that the authority granted to FEMA under the Stafford Act satisfies the first prong of the *Gaubert* test because Congress only prescribed that FEMA create rules and regulations to administer the IHP, leaving to FEMA the "choice" to determine the scope and content of those rules and regulations.

### 2. Whether FEMA is Immune from Suit for Its Discretionary Acts

Having decided that the Stafford Act vests discretion in FEMA to promulgate rules and regulations, the second *Gaubert* inquiry—whether the challenged judgment is of the kind that the discretionary function exception was designed to shield—is easily resolved. *Gaubert* itself

provides the answer. There, the Supreme Court provided the following example of a discretionary agency action that is immune from suit:

> Where Congress has delegated the authority to an independent agency or to the Executive Branch to implement the general provisions of a regulatory statute and to issue regulations to that end, there is no doubt that planning-level decisions establishing programs are protected by the discretionary function exception, *as is the promulgation of regulations by which the agencies are to carry out the programs*.

*Gaubert*, 499 U.S. at 323 (emphasis added). Thus, *Gaubert* leaves no doubt that FEMA's promulgation of the challenged regulations is the type of discretionary agency action that Congress intended to shield from review. *Cf. St. Tammany Par.*, 556 F.3d at 320–322 (holding that the decision whether to engage in notice and comment rulemaking, or to use a less formal method, to adopt policy is a discretionary act that cannot be challenged under the APA); *Rosas v. Brock*, 826 F.2d 1004, 1008 (11th Cir. 1987) (same).

Accordingly, the court finds that it lacks subject matter jurisdiction to review Plaintiffs' claims under the discretionary function exception of the Stafford Act. Plaintiffs' Complaint is therefore dismissed.

### B. Whether FEMA's IHP Regulations Are Reasonable Interpretations of the Stafford Act

Even if the court were to have jurisdiction over Plaintiffs' claims, FEMA's IHP regulations nonetheless constitute reasonable interpretations of the Stafford Act and therefore Plaintiffs have failed to state a claim. As previously noted, Plaintiffs' claims implicate the two-step formula set forth in *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. at 842–44. Under *Chevron*'s first step, courts must determine whether Congress has "directly spoken to the precise question at issue." *Id.* at 842. As discussed above, Congress has *not* provided direct instruction to FEMA concerning the content and specificity of its IHP regulations, and so the court

proceeds to *Chevron*'s second step: whether those regulations are "based on a permissible construction of the [Stafford Act]." *Id*. at 843. "[U]nder *Chevron* [step two] . . . the fundamental question is not whether we think the [agency]'s interpretation is correct, but whether the [agency]'s interpretation of the Act is at least reasonable in light of any ambiguities in the statute." *District of Columbia v. Dep't of Labor*, 819 F.3d 444, 449 (D.C. Cir. 2016). "If the agency's construction is reasonable, [courts] defer." *Council for Urological Interests v. Burwell*, 790 F.3d 212, 219 (D.C. Cir. 2015) (citing *Chevron*, 467 U.S. at 842–43). "[J]udicial deference is at its highest in reviewing an agency's choice among competing policy considerations, including the choice . . . of the level of generality at which it will promulgate norms implementing a legislative mandate." *Metro. Washington Airports Auth. Prof'l Firefighters Ass'n v. United States*, 959 F.2d 297, 300 (D.C. Cir. 1992) (internal citation omitted); *see also Cement Kiln*, 493 F.3d at 221 (holding that courts must defer to agency interpretations of statutes when rulemaking "so long as [the agency] establishes an identifiable standard governing" the subject matter Congress required).

For the reasons that follow, the court finds FEMA reasonably interpreted the Stafford Act in promulgating each contested provision of the IHP regulations.

### 1.    Count I - 42 U.S.C. § 5174(j)

The court finds FEMA's interpretation of 42 U.S.C. § 5174(j) reasonable under *Chevron*. Plaintiffs contend that FEMA failed to satisfy the requirements of that section because it failed to "[s]tate [a]ll of [i]ts [e]ligibility [r]equirements" in the IHP regulations. Pls.' Opp'n at 14. However, as discussed, the Act does not require such specificity. Moreover, Plaintiffs' arguments run counter to the persuasive reasoning of the Fifth Circuit's recent decision in *La Union Del Pueblo Entero (LUPE) v. Federal Emergency Management Agency*, 608 F.3d 217, 221 (5th Cir. 2010), which held that that FEMA's IHP regulations comport with the requirements of 42 U.S.C.

§ 5174(j) because they sufficiently "establish—though sometimes imprecisely—criteria, standards, and procedures for determining eligibility for FEMA aid." *Id*. at 221. In so holding, the court explained that "although the C.F.R. materials do not lay out the 'criteria, standards, and procedures for determining eligibility for assistance' with as much specificity as might be desired, we cannot conclude that the regulations contravene Congress's directive to issue eligibility regulations. The additional content provided by [44 C.F.R.] §§ 206.110–206.120 significantly narrows the universe of potentially eligible disaster victims." *Id*. at 223. This court agrees with the Fifth Circuit. Accordingly, FEMA's interpretation of its obligations under § 5174(j) is reasonable under *Chevron*, and, as a result, Plaintiffs fail to state a claim as to Count I. *See Cement Kiln*, 493 F.3d at 221.

The Fifth Circuit's reasoning in *LUPE* also undermines Plaintiffs' reliance on *MST Express v. Department of Transportation*, 108 F.3d 401 (D.C. Cir. 1997). Plaintiffs assert FEMA's "regulations at issue here feature . . . all [the] flaws that the D.C. Circuit held to be dispositive in *MST*." Pls.' Mot at 24. The court does not agree. At its core, the D.C. Circuit's decision in *MST Express* turned on the substance of the plaintiffs' APA claims that regulations promulgated by the Federal Highway Administration—which provided that vehicle safety controls were "adequate" if they are "appropriate for the size and type of operation of the particular motor carrier"—did not satisfy the Motor Carrier Safety Act's directive that the agency promulgate "a means of deciding whether the owners, operators, and persons meet the safety fitness requirements." *MST Express*, 108 F.3d at 402–406. The Circuit found that such an open-ended regulation did not constitute a reasonable interpretation of the agency's mandate to publish "a means of deciding" safety fitness ratings in the CFR. *Id*. at 406. Understood this way, *MST Express* is readily distinguishable because the regulations in that case did not serve to "significantly narrow" the statutory criteria

and, thus, wholly failed to carry out Congress' mandate. *LUPE,* 608 F.3d at 223. Here, on the other hand, FEMA has in fact provided sufficiently specific IHP regulations to satisfy the Stafford Act's directive—as discussed in *LUPE*—and, accordingly, the court does not agree with Plaintiffs that FEMA's regulations suffer from similar flaws to those identified in *MST Express*.

### 2.    *Count II - 42 U.S.C. § 5151(a)*

The court reaches the same conclusion regarding FEMA's interpretation of 42 U.S.C. § 5151(a). Again, that section requires FEMA to "issue . . . such regulations as may be necessary for the guidance of personnel carrying out [the IHP and any] . . . [s]uch regulations shall include provisions for insuring that the [IHP is carried out] in an equitable and impartial manner, without discrimination." 42 U.S.C. § 5151(a) (emphasis added). Relying on *Gonzales v. Oregon*, 546 U.S. 243 (2006), Plaintiffs assert that FEMA's interpretation is unreasonable because 44 C.F.R. § 206.11(b), "only repeats what is required by statute" and, thus, is nothing more than a "parroting regulation" not entitled to deference. *See* Pls.' Opp'n at 13–14. *Gonzales*, however, concerned whether an agency should be afforded deference in *interpreting its own regulations* under *Auer v. Robbins*, 519 U.S. 452 (1997), where such regulations merely "parroted" the governing statute. *Gonzales*, 546 U.S. at 257. That question is not implicated in this case. Plaintiffs are not challenging FEMA's authority *to interpret* its IHP regulations, but rather, the content of those IHP regulations. *Gonzales* is thus irrelevant to this case.

Further, Plaintiffs' argument that FEMA has merely parroted the text of the Act collapses upon further inspection. True, consistent with the text of § 5151(a), section 206.11(b) requires all FEMA personnel to "perform their work in an equitable and impartial manner, without discrimination on the grounds of race, color, religion, nationality, sex, age, or economic status." 44 C.F.R. § 206.11(b). But that is not all that section 206.11 commands. It also demands that

"government bodies and other organizations shall provide a written assurance of their intent to comply with regulations relating to nondiscrimination." *Id.* § 206.11(c). It further requires the agency to make available to a broad spectrum of interested persons—"employees, applicants, participants, beneficiaries, and other interested parties"—information as to how FEMA goes about implementing its programs and activities in an "equitable and impartial" manner. *Id.* § 206.11(d). And, perhaps most critically, section 206.11 cross-references another part of FEMA's regulations, titled "Nondiscrimination in FEMA-Assisted Programs," 44 C.F.R. §§ 7.1–7.16. The stated purpose of those regulations is to give effect to Title VI of the Civil Rights Act of 1964, "to the end that no person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be otherwise subjected to discrimination under any program or activity receiving Federal financial assistance from" FEMA. *Id.* The anti-discrimination regulations apply broadly to "any program for which Federal financial assistance is authorized under law administered by" FEMA, which would include the IHP. *Id.* § 7.4. The regulations enumerate specific forms of prohibited discrimination, *id.* § 7.5; require that applications contain assurances of non-discriminatory treatment, *id.* § 7.7; and authorize FEMA to conduct investigations to ensure compliance and to ferret out and sanction non-compliance, *id.* §§ 7.11–7.14. Thus, FEMA has done far more than regurgitate the statute in insuring the administration of the IHP in an equitable and impartial manner, and the court "must defer to [FEMA's] reasonable interpretation . . . as to the degree of detail required." *See Cement Kiln*, 493 F.3d at 218. Accordingly, the court finds that Plaintiffs also fail to state a claim as to Count II.

### 3. *Count III - 42 U.S.C. § 5189a(c)*

Finally, FEMA has published regulations that govern appeals of disaster relief decisions. Though hardly fulsome, 44 C.F.R. § 206.115 sets forth instructions and procedures for appealing the denial of assistance determinations under the IHP. The fact that Plaintiffs desire a more fully fleshed-out set of published regulations does not make the level of specificity chosen by FEMA unreasonable. *See Cement Kiln*, 493 F.3d at 221–222; *Ethyl*, 306 F.3d at 1149. Accordingly, the court finds that Plaintiffs also fail to state a claim as to Count III.[7]

## V. CONCLUSION

For the foregoing reasons, the court grants Defendants' Motion to Dismiss and denies Plaintiffs' Motion for Partial Summary Judgment.

A separate Order accompanies this Memorandum Opinion.

Dated: July 11, 2017

Amit P. Mehta
United States District Judge

---

[7] Given that Count IV depends on Plaintiffs stating a claim in Counts I, II or III, Count IV necessarily fails to state a claim, as well.